**Gwendolyn E. GIBBS**

v.

**HOUSING AUTHORITY OF the CITY OF NEW HAVEN.**

**Civ. A. Nos. H–81–727, H–81–728(JAC).**

United States District Court,
D. Connecticut.

Aug. 17, 1983.

---

Francis X. Dineen and Joanne Faulkner, New Haven, Conn., for plaintiff.

Lynn Jenkins, New Haven, Conn., for defendant.

RULING ON APPEAL

JOSÉ A. CABRANES, District Judge:

This adversary proceeding in bankruptcy was commenced under the caption *In re Gwendolyn Elaine Gibbs* by a complaint filed July 28, 1980 in the United States Bankruptcy Court for the District of Connecticut. Trial to the court was thereafter held. On March 5, 1981 the Bankruptcy Court (Krechevsky, J.) filed a Memorandum and Order ("Mem.") ruling on plaintiff's claims, 9 B.R. 758. Both parties then filed motions to amend the court's order, and the court filed subsequently a Supplemental Memorandum and Decision ("Supp. Mem.") on June 29, 1981, 12 B.R. 737. Both parties appealed. Before the present court are the appeal of the Housing Authority of the City of New Haven (the "Authority"), Civil Action No. H 81–727, and the appeal of Gwendolyn E. Gibbs ("Gibbs"), Civil Action No. H 81–728. In this ruling, familiarity with the facts of the case and with the Bankruptcy Court's earlier memoranda of decision is assumed.

I.

We turn first to the Authority's appeal and to a consideration of those issues raised in the Brief of Appellant Housing Authority of the City of New Haven (filed Apr. 26, 1982) ("Authority Brief").

A.

The Authority argues first that it should not be held liable to Gibbs, under 42 U.S.C. § 1983, for violations, if any, of her rights under the Bankruptcy Act. The Authority also argues that, in any event, no such violation ever occurred, for the Authority merely "[p]roceed[ed] in the wrong court," Authority Brief, at 8, when it ap-

plied for execution on its judgment of possession in the Connecticut Superior Court after Gibbs had already filed her petition in bankruptcy.

Analysis of the Authority's appeal begins with the determination that a violation of the automatic stay provision of the Bankruptcy Act, 11 U.S.C. § 362, undoubtedly occurred. It is precisely the point of that provision to protect the debtor from proceedings outside the bankruptcy court. "Proceeding in the wrong court" is the essence of a violation of § 362; it is exactly the evil that that section was intended to curb.

■ We come, then, to the question of the Authority's liability to Gibbs under 42 U.S.C. § 1983. In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that a plaintiff could properly seek relief under 42 U.S.C. § 1983 for a violation of rights created by federal statute, regardless of whether constitutional claims were involved and regardless of whether the plaintiff alleged violations of "civil rights or equal protection laws," *id.* at 6, 100 S.Ct. at 2505. *Middlesex County Sewerage Authority v. National Sea Clammers Assn.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), upon which the Authority relies, explained that a plaintiff could not use 42 U.S.C. § 1983 to avoid special procedural requirements (such as advance notification of a federal agency or exhaustion of state or federal administrative remedies) established by the statute creating the substantive right sought to be vindicated. However, the Bankruptcy Act contains no such special provisions. Thus, *Maine v. Thiboutot, supra,* permits an action under 42 U.S.C. § 1983 for violations of rights created by the Bankruptcy Act. The weakness of the Authority's contrary position is manifest when one compares the instant case, in which the Authority has utterly failed to cite any special procedural re-

quirements for suits to vindicate Bankruptcy Act rights, with the cases upon which the Authority relies: *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 93 S.Ct. 1827, 1837, 36 L.Ed.2d 439 (1973) (analyzing requirements under 28 U.S.C. § 2254(b)); *Brown v. General Services Administration*, 425 U.S. 820, 828–35, 96 S.Ct. 1961, 1965–69, 48 L.Ed.2d 402 (1976) (analyzing requirements under § 717 of the Civil Rights Act of 1964, 42 U.S. § 2000e–16); and *Middlesex County Sewerage Authority v. National Sea Clammers Assn., supra* (analyzing requirements under the Federal Water Pollution Control Act, 33 U.S.C. § 1365, and the Marine Protection, Research and Sanctuaries Act of 1982, 33 U.S.C. § 1415). It follows that the Bankruptcy Court did not err in concluding that a creditor's violation of § 362 of the Bankruptcy Act might give rise to liability under 42 U.S.C. § 1983.

The Bankruptcy Act does regulate payments of attorney's fees, *e.g.,* 11 U.S.C. §§ 329–331. However, it is apparent that the Act's purpose in so doing is to regulate the estate's expenses, not to bar recovery of fees from parties outside the estate. In any event, regulation of fees is not a procedural preliminary equivalent to an exhaustion requirement notice provision.

## B.

■ Having concluded that the Authority was liable to Gibbs under 42 U.S.C. § 1983, the Bankruptcy Court made an award of attorney's fees to Gibbs under § 1988.[1] The Authority objects to that award. That objection is based on several grounds, some of which are disposed of by other portions of this ruling. There is, however, one ground that is persuasive. The Bankruptcy Court was aware of the Authority's assertion that Gibbs was seeking compensation for time her attorneys had spent on claims upon which the Authority had prevailed, Supp.Mem., at 8, yet

---

1. It is, of course, the case that, in an action brought under 42 U.S.C. § 1983, a prevailing defendant may recover fees under § 1988. *Isaacs v. Temple University*, 467 F.Supp. 67, 69 (E.D.Pa.1979). Whether that potential outcome suggests that, before commencing an action un-

der 42 U.S.C. § 1983, a trustee in bankruptcy ought to obtain the approval of the bankruptcy court is not an issue raised in the case at bar, but it would appear to be a question that may arise in the future.

the Bankruptcy Court did not analyze the fee application accordingly. The award of fees must therefore be remanded to the Bankruptcy Court for consideration of this question in light of, *inter alia, Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

■ The Authority also objects that the Bankruptcy Court failed to hold a hearing on the fee application. Gibbs having made a claim under 42 U.S.C. § 1983, the Authority was on notice that an award of fees under § 1988 might be made. Thus, the Authority had time and opportunity to submit to the court whatever documentation it might have thought appropriate. The Authority has cited no case nor anything in the language of § 1988 to suggest that an award of fees under § 1988 can be made only after a hearing. On remand, however, the Bankruptcy Court will be able to consider whether the interests of justice might not be served by allowing the Authority the hearing it seeks.

### C.

■ The Authority argues that the Bankruptcy Court lacked jurisdiction over Gibbs's claim under 42 U.S.C. § 1983 and was thus without power to make an award of fees under § 1988. That argument is not persuasive. Under the Bankruptcy Act of 1978, bankruptcy jurisdiction extends to "all civil proceedings arising under title 11 or arising in or related to cases under title 11," 28 U.S.C. § 1471(b), and it is just that broad jurisdiction that the bankruptcy court, by virtue of 28 U.S.C. § 1471(c), is empowered to exercise. There can be no question that the present case is one related to a Title 11 proceeding, as the underlying substantive right sought to be vindicated in Gibbs's suit is a right created by 11 U.S.C. § 362. The Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), awarded only prospective relief and is of no consequence in this case, commenced long before the *Northern Pipeline* decision.

### D.

The Authority claims that, under 11 U.S.C. § 365, the repayment agreement it had negotiated with Gibbs was an executory contract, that it was rejected by Gibbs, and that the Authority was thereby relieved of its "obligations" under the agreement and freed to seek eviction of Gibbs. That claim is not persuasive.

■ For bankruptcy purposes, an executory contract is one "under which the obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other," *In re Knutson*, 563 F.2d 916, 917 (8th Cir.1977), *quoting* V. Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973). At the time Gibbs filed her petition, the only obligation imposed upon the Authority was that of forebearance from further eviction proceedings. There remained no affirmative obligation on the Authority to do anything at all. Thus, the Authority had fully discharged its obligations, and the contract was not executory. The mere fact that one party could interfere with complete discharge of the contract does not make it, for bankruptcy purposes, executory. A creditor may not make payment of a debt incurred before filing a condition of maintenance of the *status quo*, lest the entire thrust of the bankruptcy system be subverted. *See, e.g., Matter of U.S. Financial, Inc.*, 594 F.2d 1275, 1278–80 (9th Cir.1979).

■ Even were one to assume, *arguendo*, that the repayment agreement was an executory contract, the Authority's claim would still fail. The Authority states that Gibbs "rejected," Authority's Brief, at 18, the repayment agreement. But an executory contract may only be rejected by a trustee upon the approval of the bankruptcy court. *See* 11 U.S.C. § 365(a). There is nothing in the record of this case to suggest that such approval was ever sought or given; hence, Gibbs's "rejection" of the agreement, if any, would have been invalid.

### E.

The Authority argues that it was not barred from proceeding in state court by 11 U.S.C. § 362, because its application to the Connecticut Superior Court was an attempt to perfect its interest in property, excepted from automatic stay by § 362(b)(3), and because the Authority was a governmental unit enforcing its regulatory power, and thus excepted from automatic stay by § 362(b)(4) and (5).

■ Neither of these contentions is persuasive. The Authority has suggested no basis for the claim that it needed to evict Gibbs to perfect its interest in the property. "Perfection" of an interest refers to the status of one creditor *vis-a-vis* other creditors or parties claiming an interest in the property. *In re J.R. Nieves & Co.*, 446 F.2d 188, 193 (1st Cir.1971). The Authority has not suggested why it needed to perfect its interest, how securing an execution of judgment of possession contributed to perfection, or indeed why its interest in the property was not perfected all along.

■ The Authority's claim that it was engaged in regulatory activity hinges on the assumption, arguably valid, that the Authority does engage in regulation when it sets rent levels. The only case cited by the Authority on this point, *Matter of Briarcliff*, 16 B.R. 544 (Bkrtcy.D.N.J.1981), does hold that the setting of rent levels is a regulatory action. But it is apparent that that activity is regulatory because it involves a policy-making decision broadly affecting the public welfare. In the instant case, the relevant action by the Authority consisted simply of trying to obtain payment for rent from Gibbs. Such an action is not regulation.

### F.

■ The Authority argues that the determinations of the Connecticut Superior Court on those issues presented to it by the Authority are *res judicata*, barring Gibbs from attempting to relitigate those issues before the Bankruptcy Court. However, the state court was without subject-matter jurisdiction, and any orders issued by it were therefore void. *Kalb v. Feuerstein*, 308 U.S. 433, 440, 60 S.Ct. 343, 346, 84 L.Ed. 370 (1940). That Gibbs appeared in the state court proceeding is irrelevant, for the parties cannot create subject-matter jurisdiction where it does not exist. F. James & G. Hazard, Civil Procedure (2d Ed., 1977), 644.

### G.

■ Finally, the authority contends that the Bankruptcy Court erred in finding a violation of 11 U.S.C. § 525. Ordinarily, such a finding may be challenged on appeal only if the bankruptcy court has committed a clear error, *see* Rule 810, Rules of Bankruptcy Procedure, although that rule is arguably inapplicable where the bankruptcy court relies, as it did here, Mem., at 9, on stipulated facts. *See In re Knutson, supra*, 563 F.2d at 917 n. 1.

In either case, the present court concludes that a violation of 11 U.S.C. § 525 was clearly made out. Although Gibbs had been discharged in bankruptcy on September 10, 1980, the Authority continued to seek her eviction as a spur to payment of her supposed debt. As that debt had been discharged in bankruptcy, 11 U.S.C. § 525 required that it be ignored by the Authority. In holding that the Authority violated the statute, the Bankruptcy Court committed no error.

### II.

■ We turn now to the issues raised by Gibbs in her appeal in Civil Action No. H 81–728.[2]

---

**2.** The court's listing of the issues raised by Gibbs on appeal is derived from Gibbs's Statement of Issues (filed with the Bankruptcy Court on Sept. 14, 1981) and Brief on Appeal (filed with the District Court on Apr. 29, 1982). The court deems those to be the only issues properly made subjects of appeal by Gibbs.

In a prior proceeding before the instant court, Gibbs argued that she was also appealing from the Bankruptcy Court's failure to grant her original prayer for relief asking that the Authority and its attorneys be held in contempt for violation of the automatic stay. In an oral ruling delivered on the record and in the presence of counsel, March 14, 1983, this court held that the

## A.

Gibbs argues that the Bankruptcy Court erred in denying her claims under two Connecticut statutes, the Unfair Trade Practices Act, C.G.S. § 42–110b, and the Unlawful Collection Practices Act, C.G.S. § 36–243b. Ruling on the former claim, the Bankruptcy Court simply stated: "The court concludes that the actions complained of are not within the intent or purpose of the cited statute and that Gibbs has shown no basis for recovery thereunder." Mem., at 9. The court went on: "A like conclusion is drawn in considering the claim of violation" of § 36–243b. Mem., at 9. The court summarized by holding that: "Gibbs has not satisfied her burden of proof under either statute," *id.*

The court did not discuss either claim further. It did not, with respect to these claims, make findings of fact, nor did it draw particular conclusions of law, except on the ultimate issues. No explanation was made of what Gibbs's burden of proof was nor of how she had failed to meet it. On this record, it is impossible for the present court to review properly the Bankruptcy Court's decision. Accordingly, this issue will be remanded to the Bankruptcy Court to permit filing of appropriate findings of fact and conclusions of law, under Rule 752, Rules of Bankruptcy Procedure.

## B.

Gibbs seeks damages for violation of her statutory rights, pursuant to her claim under 42 U.S.C. § 1983.

In its initial memorandum, the Bankruptcy Court indicated that Gibbs was not pressing her claim under § 1983, Mem., at 3, and accordingly denied her claim for damages under that statute, Mem., at 12, presumably on the ground that the claim had been withdrawn. The court reconsidered its earlier ruling after the parties stipulated that Gibbs had not withdrawn her § 1983 claim, Supp.Mem., at 1–2. It would seem that, by accepting the parties' stipulation and then ruling that Gibbs had prevailed on her § 1983 claim, the court vacated its earlier order denying Gibbs damages under § 1983. The court's supplemental memorandum does not, however, discuss the question of damages at all. Remand to the Bankruptcy Court for consideration of this question is therefore appropriate. The present court does not, of course, intimate any view as to whether damages are appropriate or, if appropriate, what the amount of damages might be.

## C.

Gibbs asserts that the parties entered into a stipulation, pursuant to which the Bankruptcy Court would order the Authority to reinstate Gibbs's lease, and that the court, through an oversight, neglected to enter the appropriate order. *See* Gibbs's Brief on Appeal (filed Apr. 28, 1982), at 13. There appears to be no question that the stipulation was presented to the court on April 21, 1981, yet the court's supplemental

issue of contempt, as applied to the Authority's counsel, had not been preserved on appeal. The court now reaffirms that ruling and broadens it to include the issue of sanctions against the Authority.

The question of contempt was not mentioned in Gibbs's Statement of Issues nor in her Brief on Appeal. It is true that in her Reply Brief (filed May 17, 1982), Gibbs discusses several cases in which parties were held in contempt for violations of automatic stays; however, those cases are cited to show that governmental units are not necessarily exempt from such stays and not for the argument that the Bankruptcy Court erred in denying Gibbs that particular relief. *Id.,* at 10. Moreover, that brief was filed not in Gibbs's appeal, but in response to the Authority's brief in Civil Action No. H 81–727, the Authority's appeal. Only in Gibbs's Supplemental Brief (filed May 25, 1982) in Civil Action No.

H 81–728 does she finally claim to have appealed this issue; and, at that point, she merely claims to have raised it, offering no explanation or analysis of her position. *Id.,* at 2. Such a belated attempt to raise the issue does not constitute an adequate appeal, and this court has no hesitation in holding that Gibbs's eleventh hour effort to claim this question has been foreclosed.

In any event, it is doubtful that disposition of this question makes any difference. Gibbs has already won injunctive relief from the Bankruptcy Court, and a violation of that injunction would presumably create a new basis for an application for contempt. Furthermore, Gibbs has already won an award of fees under 42 U.S.C. § 1988. It does not appear that consideration of the contempt question, had it been timely raised, would have had any practical impact on the outcome of this case.

memorandum, filed June 29, 1981, contains no mention of the requested order. In light of that fact, the Authority argues that "[t]he Bankruptcy Court declined to order reinstatement, probably in recognition of the fact that the discharge provision of the Bankruptcy Act, 11 USC [sic] § 524, does not require reinstatement of leases and § 365, [sic] affirmatively discharges landlords from any such obligations except following curing of defaults. The Court was correct in so holding...." Reply Brief of the Appellee Housing Authority of the City of New Haven (filed May 13, 1982), at 9.

Neither party has pointed to anything in the record that suggests that the Bankruptcy Court declined to enter the requested order or ruled upon it in any fashion whatsoever. On the other hand, this court will not assume an oversight by the Bankruptcy Court. This issue too must be the subject of remand.

### D.

█ Finally, Gibbs raises two objections to the Bankruptcy Court's fee award. As this court has already held that the question of the fee award must be remanded, it is unnecessary to rule now on this aspect of Gibbs's appeal. Gibbs may address her arguments to the Bankruptcy Court, and this court will, of course, review those arguments in the future if they are raised again on some further appeal, should there be one.

### III.

This case is remanded to the Bankruptcy Court for further consideration of the award of fees to Gibbs's attorneys, of Gibbs's claims under the Unfair Trade Practices Act and Unlawful Collection Practices Act, for consideration of the issue of an award of damages to Gibbs under 42 U.S.C. § 1983, and for clarification of the Bankruptcy Court disposition of the requested order for reinstatement of Gibbs's lease. Of course, the present court intimates no view as to the proper outcome of any of these issues.

With respect to all other matters raised by the parties on these appeals, the judgment of the Bankruptcy Court is affirmed.

It is so ordered.