715 P.2d 66

**HNG FOSSIL FUELS COMPANY,**
Plaintiff-Appellee,

v.

**T.L. ROACH, Jr., Rosemary J. Roach, J.A. Whittenberg, III, Jeanne P. Whittenberg, Sybil B. Harrington and the Don and Sybil Harrington Foundation, Inc.,**
Defendants-Appellants.

No. 15709.

Supreme Court of New Mexico.

Feb. 25, 1986.

Rehearing Denied March 25, 1986.

Paul A. Kastler, Raton, for defendants-appellants.

Thomas M. Hnasko, Owen M. Lopez, Santa Fe, for plaintiff-appellee.

## OPINION

SOSA, Senior Justice.

This case raises the issues of whether the trial court exceeded the scope of its mandate from this Court and of what remains of the law of the case, after both parties have reversed the positions they had maintained at trial and on appeal. We hold that the second trial court did exceed its jurisdiction and remand again for a proper and final disposition of the matter, which will include an equitable tolling of the terms of the oil and gas leases in dispute.

HNG Fossil Fuels Company (HNG) ·first filed this action in August, 1980, seeking an order of interpleader and a declaratory judgment determining entitlement to delay rentals paid under two oil and gas leases in Colfax County. Defendants T.L. Roach et.

al. (Roaches) were owners of the surface estates and executors of the leases. The leases contained non-warranty clauses which required HNG, as lessee, to bear the burden of determining title or interests in the land or minerals. Defendants Thomsons owned a 50% "non-participating mineral interest" in the property.

At the first trial, the district court determined that the Thomsons had no interest in the delay rentals. The trial court also ruled that the leases were cancelled because HNG had breached the non-warranty clauses by interpleading Roaches. Judgment was entered on June 15, 1981. On appeal, this Court affirmed as to the Thomsons' interests, but reversed on the issue of cancellation. The case was then remanded for a determination of "the amount of damages and costs" incurred by the Roaches. *HNG Fossil Fuels Co. v. Roach,* 99 N.M. 216, 221, 656 P.2d 879, 884 (1982) *(HNG I).* Unfortunately, by the time the opinion of this Court was filed (December 29, 1982), the primary lease had expired by its own terms on September 1, 1982.

On the remand (filed on January 1, 1983) a different judge determined that HNG was entitled to a refund of its deposit into the court registry of the delay rentals for the year 1980–1981, the sum of $82,172.35. While the first appeal was pending, HNG had made a tender of the rentals covering the 1981–82 lease period to the Roaches' depository bank. Roaches rejected the tender. That sum was likewise awarded to HNG by the district court.

The issue before us now is whether the district court exceeded the bounds of its mandate by denying Roaches' claims to the delay rentals and the tender.

Roaches argue that the second trial court ignored the law of the case by refunding the deposited rentals. The original leases simply called for HNG to pay the rentals directly to Roaches. When Thomsons advised HNG that they claimed a 50% interest in the rentals, HNG sought to protect itself from possible termination of the lease by

filing the interpleader action. *HNG I* at 218, 656 P.2d 879. At that time, HNG did not contend that the rentals should not be paid, only that HNG was in doubt as to the proper recipient. That question was litigated and answered by the trial court in favor of the Roaches. This Court affirmed that answer.

Nevertheless, on remand HNG contended that Roaches were no longer entitled to the rental payments, even though the next year's rental had also been tendered. HNG's revised theory is that Roaches may not claim the rentals because Roaches had argued for cancellation based on breach of the non-warranty clauses. HNG contends that its title to the leases was so seriously undermined by Roaches' litigation position that the leases had become worthless to a prudent operator. Both parties have essentially reversed their prior positions, with HNG now claiming that Roaches breached the lease agreements, while Roaches respond that the leases have always been in full force with rentals payable to Roaches.

Roaches assert that they manifested no action which would have prevented HNG from continuing to explore under the leases, a right secured by the deposits of delay rentals with the court. In fact, say Roaches, HNG now wants to get out of the leases because the entire area, of which the leases cover a portion, consists of "dry holes" which lack sufficient mineralization to be worth developing. Furthermore, HNG no longer needs the leases because it has since severed its subsidiary which had hoped to develop the mineral interests.

HNG replies instead that a "cloud of cancellation" hovered over the leases until this court dispelled it on December 29, 1982. But by that time, the leases had expired by their own terms.

The trial court, on remand, did award damages and costs to Roaches for defending the declaratory judgment and interpleader actions, but not for the cost of pursuing the counterclaim of cancellation.[1]

---

**1.** The trial court characterized as "frivolous" the position of Roaches that they were entitled to

100% of the delay rentals, yet that position was confirmed by the first trial court and affirmed

The second trial court determined, however, that HNG should get back the consideration it had paid in, since it had lost its bargained-for right to explore. The court found that circumstances had changed since the mandate, such that HNG can no longer obtain any benefit from the leases, even if they were still in effect. The court concluded as a matter of law that the concept of tolling of the leases could not be considered because it was beyond the mandate. Finally, the district court awarded the refund to HNG under a theory of unjust enrichment, ruling that, "[i]n connection with delay rentals, every equity in this case is wholly in favor of the plaintiff HNG and wholly against the defendants Roach".

This case is simpler than counsel would lead this Court to believe. HNG paid into the court registry the delay rentals because it believed the leases to be in effect and wanted to preserve its exploration rights. Even after the trial court had determined that the leases were cancelled, HNG tendered payment for the succeeding year to protect its options. If the primary lease had not expired by its own terms prior to the filing of this Court's opinion, then there is no question that the leases would still be valid and that Roaches would be entitled to the delay rentals. Or, if HNG had not pursued the interpleader action, but instead had simply continued to pay the rentals to Roaches and had defended directly against Thomsons, the entire problem would not have arisen. If, as HNG contends, its decision not to explore was owing solely to considerations of prudence brought about by the cloud created by Roaches' claim of cancellation, then that decision could have been reversed when this Court held that the leases were still in effect. But by that time, the leases had expired by their own terms. Hence, HNG argues, it has lost its bargained-for benefit. HNG sought relief from the equitable powers of the trial court, urging that the distribution of the delay rentals was merely a "housekeeping

chore" to clean up a matter not expressly addressed on appeal.

What this Court held in *HNG I* was that the leases were still in effect and that the Thomsons had no claim to any of them. We now make explicit the logical conclusion that the rentals therefore must have been owed at all times to the Roaches. HNG made a tender to Roaches on August 28, 1981 of the delay rentals for 1981–82 because (on the advice of counsel) it correctly anticipated the decision of this Court and wished to preserve its option to continue exploration. HNG later made no effort to extend the deadline of the primary lease, but allowed it to expire on September 1, 1982 by its own terms.

Both parties have called to our attention the case of *Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324 (10th Cir.1982), which presents many similarities to the case at bar. In *Jicarilla,* the Tribe sued the Secretary of the Interior and oil and gas lessees for failure to comply with statutory requirements of notice in advertising leases on the Tribe's reservation in New Mexico. The trial court determined that the terms of the leases should be tolled during the pendency of litigation. Furthermore, the trial court excused the lessees from payment of delay rentals during that period.

The Tenth Circuit expressed its approval of the tolling concept, but reversed on the issue of delay rentals. The court agreed that:

> [A] lessee need not pay rentals while the lessor is asserting that the lease has terminated. The lessee, however, is not relieved of the liability for these payments. If the lease is subsequently held valid, the lessee is then liable for the payments and must pay them within a reasonable time.
>
> *Id.* at 1342.

In "balancing the equities," the court decided that the loss resulting from delay

---

on appeal by this Court. Even the suggestion that the proper remedy was cancellation was adopted by the first trial court, although reversed on appeal. [We note that the trial court

adopted verbatim, epithets and all, the findings of fact and conclusions of law submitted by HNG.]

must fall somewhere and since the Tribe was successful in its primary claim, but not as to its choice of remedy, i.e., cancellation, it should be entitled to the rentals which had been placed in escrow even though the lessees had received no benefits during the time of tolling. *Id.* at 1343. Significantly, the trial court had ruled against the Tribe that a cancellation of the leases was the appropriate remedy. This ruling was upheld on appeal.

*Jicarilla* is consistent with the holding of this Court in *HNG I,* that is, that the leases remain in effect when they have been secured by the payment of delay rentals. The differences are, first, that the trial court here did not toll the terms of the leases, so that the main one expired before this Court had rendered its opinion. Second, the trial court here erroneously ruled that cancellation of the leases was required. This did constitute a cloud on HNG's rights to explore.

Now we are faced with a complicated situation where the equities are scattered. HNG maintains that Roaches created the cloud by counterclaiming cancellation. Roaches reply that all they ever wanted was to receive the rentals; that their bargained-for-benefit was payment, which went not to them, but into the court registry as a result of the filing of interpleader by HNG. On the remand, the trial court concluded as a matter of law that tolling was outside the scope of its mandate, and that, even if it were not, tolling would be inequitable due to changed circumstances. The court seemed much impressed by the fact that HNG has no further use for the leases, because of the decline in oil production and the severance of HNG's production subsidiary. Thus, the court determined that it would be a burden, rather than a benefit, to HNG if the leases were reinstated.

■ We note that the changed factual conditions were not caused or precipitated by any action of the Roaches and are, strictly speaking, irrelevant. HNG bargained only for the right to explore, not for certainty of a profitable operation. Just as

we held that HNG was entitled to pursue its legal action in interpleader, so now we hold that Roaches were entitled to assert the counterclaim of cancellation, even though, as in *Jicarilla,* that remedy was legally inappropriate. Because the leases were subsequently held to be valid, HNG is liable for payments during this period. *Jicarilla,* 637 F.2d at 1342.

■ As to the issue of the tender of delay rentals while the appeal was pending, we agree with Roaches that the tender was properly made and was effective to continue the lease for another year. *Ballard v. Miller,* 87 N.M. 86, 529 P.2d 752 (1974). Consequently, no interest on this amount is due to Roaches. *Smith v. Owens,* 397 P.2d 673 (Okl.1963).

■ On the issue of tolling, it was the contemplation of this Court in *HNG I* that there would be no doubt as to the validity of the leases once our opinion had issued. The possible expiration of the primary lease by its own terms was simply not brought to the attention of this Court. It would seem that the position of HNG changed between August 28, 1981, when it tendered the rentals to keep the lease alive, and September 1, 1982, when it allowed the lease to expire without reminding this Court of the deadline.

Just as did the Tenth Circuit in *Jicarilla,* we must balance the equities in light of all the pertinent facts and circumstances. Like the Jicarilla Tribe, Roaches were correct in their basic position, namely their defense to the declaratory judgment action, but incorrect as to the proper remedy (cancellation) to be applied. On the other hand, unlike the *Jicarilla* case, HNG was also correct in its basic position, that interpleader was an acceptable (if not the preferred) procedure to avoid multiple liability and possible forfeiture of its leasehold interests.

Thus, we conclude that the delay in resolving the legal issues was the fault of neither party. Common sense supports the equitable procedure of tolling the term of the leases from the time of judgment in the

declaratory judgment and interpleader action, through the date of issuance of the opinion in *HNG I.* Since HNG has achieved no benefit during this period, but is liable for the delay rental payments because the leases were held to be valid, an extension of the term is the appropriate remedy. HNG has paid or tendered payment of delay rentals for two years. The cloud of cancellation lasted about 18 months.

HNG did seek the equitable powers of our courts to uphold its exploration rights under the leases, and paid the delay rentals into the court registry to secure those rights. We can only give HNG the relief it sought, a determination that the leases are in effect and payable to Roaches. If those leases have now diminished in value due to changed factual circumstances, those changes are not fairly attributable either to Roaches or to the deliberative pace of the judicial process. Accordingly, it would be inequitable now to relieve HNG of an obligation which it initially asked our courts to enforce.

The proper disposition of this matter pursuant to the Opinion and Mandate of this Court in *HNG I* is to award to Roaches:

1. The original interplead deposit of delay rentals, plus interest at the statutory rate;

2. The amount tendered to the Amarillo National Bank on August 28, 1981, with no interest;

3. Damages and costs to Roaches in defending the declaratory judgment and interpleaded action (as already determined); and

4. Damages and costs in recovering the deposited rentals.

The judgment of the trial court is reversed and the matter remanded for proceedings consistent with this opinion including the entry of an order tolling the term of the leases from the filing of the judgment to the date of the Opinion in *HNG I.*

IT IS SO ORDERED.

RIORDAN, C.J., and WALTERS, J., concur.