**In re Alan J. ANTWEIL and Mary Frances Antweil, Hobbs Pipe and Supply, a general partnership, Morris R. Antweil, Debtors.**

**Bankruptcy No. 11–86–00254 MA.**

United States Bankruptcy Court,
D. New Mexico.

March 1, 1989.

See also, Bkrtcy., 97 B.R. 63.

Andrew J. Cloutier, Gregory J. Nibert, and William P. Johnson, Roswell, N.M., trustee.

William J. Arland, III, Albuquerque, N.M., and John Paul Weber, Hobbs, N.M., for Bravo.

Victoria S. Arends, Roswell, N.M., for Speight.

Richard V. Gose, Santa Fe, N.M., for Haegler.

James S. Starzynski, Albuquerque, N.M., for FNBIA.

Roberta Kass, Los Angeles, Cal., for Atlantic Richfield.

Damon C. Richards, Roswell, N.M., for Hanlad Oil.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for hearing on two related motions. The first, filed by Stewart, Haegler and Welter (the Stewart movants) seeks a determination that certain oil and gas leases are executory contracts that the trustee and debtor have assumed, and urges the Court to require the trustee to cure prepetition defaults in royalty payments. The second, filed by Speight, Marshall and Wyman (the Speight movants) seeks identical relief for different oil and gas leases.[1] The trustee opposes both motions, arguing that the oil and gas leases are not contracts, or, even if they could be construed as contracts they are no longer executory.[2] The parties stipulated to the facts and have extensively briefed their positions. Having considered the arguments and being otherwise fully informed and advised, the Court finds the motions are not well taken.

FACTS

The parties stipulated to the following:

1. Stewart, Haegler and Welter are royalty interest owners in two gas wells leased, through assignments, to the debtors.

2. These two wells are producing wells, and have been producing since before the bankruptcy petitions were filed.

3. The Stewart movants failed to receive payments for their interest in the wells' production for a period of time prior to the bankruptcy.

---

1. Hanland Oil Company joined in support of both motions and filed a brief.

2. First National Bank in Albuquerque, Bravo Energy, Inc. and the Atlantic Richfield Company filed briefs in support of the trustee's position.

4. The Stewart movants are scheduled as creditors in the bankruptcy.

5. Speight, Marshall and Wyman are owners of various undivided interests in the oil, gas and mineral estates in certain other lands leased to the debtors.

6. Production of oil or gas, or both, was being obtained by the debtors from the Speight movants' leases for various periods of time prior to the bankruptcy and this production continued after the bankruptcy.

7. Prior to bankruptcy the debtors received royalties from production belonging to the Speight movants and failed to remit those funds to them.

8. The Speight movants have filed proofs of claim for amounts due.

The Court makes the following additional findings:

9. Bravo Operating Company, a wholly owned subsidiary of Bravo Energy, Inc., was appointed interim operator of movants' oil and gas properties, formerly operated by the debtor, pursuant to an order entered in this Court on April 1, 1986.

10. On May 16, 1988 an order was entered confirming the trustee's First Amended Joint Liquidating Plan of Reorganization. Article VI of that plan provides, in part:

> The trustee rejects all executory contracts and leases ... The foregoing is expressly predicated on the trustee's determination that the oil and gas leases and mineral interests ... are not executory contracts. In the event the Court determines either prior to or after confirmation of the plan that the ... oil and gas leases and mineral interests owned by the estate are in fact executory contracts, then the trustee shall have 60 days ... to affirm.

## DISCUSSION

An executory contract is one under which the obligations of both parties are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other. *Shaw v. Dawson*, 48 B.R. 857, 859 (D.N.M.1985). Therefore, the question for the Court is whether failure by either the lessors or lessee to comply with the terms of the leases would excuse performance by the other.

Under New Mexico law an oil and gas lease creates an interest in real property. *Terry v. Humphreys*, 27 N.M. 564, 575–76, 203 P. 539 (1922). *See also Johnson v. Gray*, 75 N.M. 726, 728, 410 P.2d 948 (1966). Movants argue, however, that significant duties remain: for the lessors, to not interfere with the lessee's rights, to not oust the lessee, to warrant and defend title,[3] to notify the lessee of changes in ownership, and to pay taxes and liens or allow the lessee to do so; for the lessee, to explore and develop the leases in compliance with the law, to pay delay rentals, to pay royalties, to comply with implied covenants or face judicial forfeiture, and to bury all pipelines. Therefore, they claim that the oil and gas leases are both grants of real property and executory contracts. The "duties" of the respective parties will be discussed in turn.

### Lessors' Duties

The more significant duties that the movants claim are unperformed due are those to warrant and defend title and to not oust or otherwise interfere with the lessee's rights. These exact duties were found not to make an oil and gas lease an executory contract in *In re Heston Oil Company:*

> [Lessor's] only obligations under the contract is to defend her title to the leased land and not to interfere with the lessee's drilling obligation. Breach of these duties would not excuse performance by [lessee], but would merely abate [lessee's] obligation for so long as [lessor] was in breach.

69 B.R. 34, 36 (N.D.Okla.1986) (applying Oklahoma law) (citations omitted).

The Court finds the same logic is valid under New Mexico law. First, movants

---

3. In six leases before the Court the warranty provisions were struck. The remaining leases all include warranties.

cite no New Mexico or other cases that hold that a breach by the lessor relieves the lessee of all his duties. In fact, language in several cases would indicate that the opposite is true. For example, in *HNG Fossil Fuels Company v. Roach*, 103 N.M. 793, 795, 715 P.2d 66, 68 (1986) (*HNG II*) the Supreme Court of New Mexico held that a lessee was *not* relieved of the liability to pay rentals under a lease during the pendency of a suit by the lessor that asserted the lease had terminated. Similarly, in *HNG Fossil Fuels Company v. Roach*, 99 N.M. 216, 220, 656 P.2d 879, 883 (1982) (*HNG I*) the Supreme Court of New Mexico held that a lease would not be terminated for breach of a non-warranty [4] clause by the lessee, if damages would be adequate. It seems to the Court that a lease would likewise not be terminated for breach of a warranty clause. *Compare Merchant's National Bank of Clinton, Iowa v. Otero*, 24 N.M. 598, 601–02, 175 P. 781 (1918) (breach of covenant of warranty in deed creates a chose in action.)

Additionally, a duty to refrain from interfering with the performance of the other party to the contract should not make it executory. *See Gibbs v. Housing Authority of New Haven*, 76 B.R. 257, 262 (D.Conn.1983). Therefore, movants' duty to refrain from interference with the lessee's rights in the lease is illusory.

The Court furthermore finds that the other duties claimed owing are either not really duties imposed by the lease or too insignificant to make their breach a material default. The leases do not require movants to notify the lessee of changes in ownership. Rather, they provide that the lessee will not be bound by those changes unless the lessee receives written notification thereof. *See e.g.* Exhibit A to Stipulation as to Facts, *In re Antweil*, No. 11–86–

00254 MA (Bankr.D.N.M.1988). Failure to notify the lessee of a change would not be a material default. Similarly, the leases do not require movants to pay liens and taxes. The leases require only that lessors agree "that lessee, at its option, may discharge any tax, mortgage, or other lien". *See id.* The Court does not consider this duty, to the extent it is a duty, to be material.

Therefore, the Court concludes that failure of the lessors to comply with terms in the leases would not excuse performance by the lessee. The leases are not executory contracts.[5] Although this finding is sufficient to dispose of the motions, the Court further decides that the lessee's remaining duties also do not make the leases executory contracts.

*Lessee's Duties*

Movants claim that the lessee has a continuing duty to explore and develop the leases in accordance with the extensive rules, regulations, and statutes of New Mexico; to pay delay rentals, to pay royalties, to comply with implied covenants, and to bury pipelines. Under oil and gas law, however, a distinction must be made between covenants, which are duties spelled out in the lease or implied at law, and conditions, which are not duties but events that trigger termination of the lease and reversion. *See generally HNGI*, 99 N.M. at 220, 656 P.2d at 883; *Greer v. Salmon*, 82 N.M. 245, 247–48, 479 P.2d 294 (1970).

In this case if the lessee failed to continue production or failed to pay delay rentals on any leases not being developed he would not be in breach of the leases; the leases would simply terminate upon their own terms and the property interests would revert to the lessors. In other words, the lessee has a right to continue production or to pay delay rentals, not a duty to do so.

---

**4.** The "non-warranty" clause provided that the lessor did not warrant title and stated that the lessee assumed the responsibility for title examination and all burdens attendant thereto.

**5.** The Court disagrees with movants that *In re Trigg*, 630 F.2d 1370 (10th Cir.1980) should mandate a contrary decision. This case holds only that the stay provisions of the former Bankruptcy Act do not prevent an automatic

termination of an oil and gas lease for failure to pay rentals, *id.* at 1373, and that, once terminated, the Bankruptcy Court was powerless to resurrect them, *id.* at 1374. The issue was not whether the leases were executory contracts and, even if the Court had assumed they were, that assumption was irrelevant to the actual holdings.

*See Id.* If the lease terminated the lessors would be excused from future performance, but that is because the relationship had ended by its own terms, not because the lessee had committed a material breach. Also, the fact that the state regulates the oil and gas industry should not change the relationships of parties to the lease.

Next, the duties of the lessee to pay royalties and to bury pipelines are express covenants in the leases. The lessee also has a duty to comply with covenants implied by law. Failure to comply with these duties, however, results in a claim for damages, not cancellation.[6] *See HNGI,* 99 N.M. at 220, 656 P.2d at 883; *HNG II,* 103 N.M. at 796, 715 P.2d at 70 (Lessors were correct in defending declaratory judgment action by claiming breach of anti-warranty provision in lease, but incorrect in counterclaiming for cancellation); *Darr v. Eldridge,* 66 N.M. 260, 264–65, 346 P.2d 1041 (1959) (Equitable remedy of cancellation appropriate for breach of implied warranty if damages would be "conjectural and speculative."); and *Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324, 1333 (10th Cir. 1982) (Equitable remedy of cancellation is not automatic). *See also Greer,* 82 N.M. at 249, 479 P.2d 294 (citing Sperling, *Habendum Clause as Affected by Shut-in, Commence Drilling, Continued Drilling and Other Clauses,* 9 Inst. on Oil & Gas L. & Tax'n 1, 19 (1958) ("Payment of royalty is not a condition, but an express covenant, non-payment ... having no more effect upon the duration of the lease than a breach of the other duties or covenants contained in the lease.")) *and* § 70–10–4(B) N.M.S.A.1978 (1987 Repl.) (omitting cancellation as a remedy after non-receipt of oil and gas proceeds). Finally, eleven of the fourteen leases before the Court (those on Forms 345 and 314) provide that a breach of "any obligation arising hereunder" (form 345) or a "failure by lessee to perform ... any of its implied obligations" (form 314) shall not work a forfeiture, termination, or revision of the lease.[7] Therefore, failure to comply with any implied covenant would not excuse lessors from the lease. They would have to bring a suit for damages; if a court then determined that damages were inadequate cancellation might be available. In sum, the Court also finds that the duties remaining for the lessee are not sufficiently material to render the oil and gas leases executory contracts.

## OTHER ARGUMENTS

The trustee has argued that the movants may not bring these motions before the Court because they are bound by a confirmed plan that specified the leases were not executory contracts. The Court disagrees. The clear language of Article VI of the plan contemplated these motions and allowed time for the trustee to affirm the contracts if the Court found them executory.

The movants alternatively ask the Court to find that the oil and gas leases are unexpired leases. It is clear that under New Mexico law an oil and gas lease is not a "lease" and does not create a landlord/tenant relationship. *See Vanzandt v. Heilman,* 54 N.M. 97, 108, 214 P.2d 864 (1950).

Movants' final argument is that the equities of the stituation require the Court to find that the leases are executory contracts. They argue that the debtor's substantial estate was made possible only because of their mineral interests. They also argue that allowing the trustee to liquidate the leases will force them to continue performing even though they have not been paid for prepetition royalties. The Court finds these arguments unconvincing. The fact is that the movants have prepetition unsecured claims against the estate. A fundamental policy of the Bankruptcy Code is to treat similarly situated creditors the same. Equity dictates that the movants should be treated the same as other prepet-

---

6. *HNGI* does state in *dicta* that cancellation may be appropriate if damages would be inadequate. 99 N.M. at 220, 656 P.2d at 883. In the instant case there are no allegations that damages would be inadequate from Bravo Energy, the current operator of the leases.

7. The other three leases are silent as to the effect of a breach of implied covenants.

ition unsecured creditors. This ruling also does not force the movants to continue performance. In the unlikely event they were actually called upon to do something in the future they could either perform or face a suit in damages. The leases are not executory contracts.

An appropriate order shall enter.