**In re Derek Milo COUTURE, Veronica Lee Whalon, Debtors.**

**Bankruptcy Nos. 96–10309, 96–10310.**

United States Bankruptcy Court,
D. Vermont.

Nov. 21, 1996.

**838**

N.L. Scibek, Burlington, VT, for Creditor Burlington Housing Authority (Landlord).

L. Shapero, Vermont Legal Aid, Inc., Burlington, VT, for Debtors Veronica Lee Whalon and Derek Milo Couture (Debtors).

## MEMORANDUM OF DECISION GRANTING RELIEF FROM STAY

FRANCIS G. CONRAD, Bankruptcy Judge.

Landlord moves [1] for relief from the automatic stay, 11 U.S.C. § 362,[2] "only to proceed with its eviction of Debtor[s] pursuant to a Writ of Possession issued by the Chittenden Superior Court on March 19, 1996 and served upon [them] on March 21, 1996." Landlord's Motion (filed April 22, 1996). We grant the motion because Debtors came into Bankruptcy with no legally cognizable interest in Landlord's premises, and because this is a Chapter 7 case, the property is not necessary for reorganization.

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(G) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52, as made applicable by Fed.R.Bkrtcy.P. 7052.

2. Hereafter, all statutory references are to Title 11 of the United States Code unless otherwise specifically noted.

## FACTUAL BACKGROUND

Landlord, a public housing agency, owns Franklin Square Apartments in Burlington. Debtors lived at 31 Franklin Square the past six years. When they fell behind in their rent payments, in late 1994, Landlord considered their lease terminated for non-payment, and filed an ejectment action in State Court to regain possession of their apartment. Landlord's motion for summary judgment was granted on May 2, 1995.

Although entitled to a Writ of Possession, Landlord, in mid-May 1995, agreed to allow Debtors an opportunity to reinstate their lease upon payment of their arrearages. The parties' "Settlement Agreement" was "Approved as to content & form" by Debtors' Vermont Legal Aid, Inc., attorney, and "SO ORDERED" by the Chittenden Superior Court on June 1, 1995. The Settlement Agreement fixed the amount of Debtors' rent arrearage and provided a timetable for bringing the arrearage current. More important for our purposes, however, the Agreement establishes ineluctably that Debtors' lease was terminated pre-petition. Paragraph 1 of the Agreement provides, "The [Debtors] admit that their lease has been legally terminated by [Landlord] for non-payment of rent." The consequence, which left Debtors in a tenuous position, is clearly spelled out in bold-faced type:

> The [Debtors] agree and understand that if they fail to make any of the payments ... then in that event [Landlord] shall be entitled to obtain an immediate Writ of Possession for the apartment from the Chittenden Superior Court in Burlington.

Settlement Agreement at ¶ 5, Burlington Housing Authority v. Couture, Docket No. S1665–94 CnC, (June 1, 1995). The Agreement further provided:

> The parties agree that this matter shall now be dismissed with the Court and in the event the [Debtors] default on this Agreement, the [Landlord] shall be entitled to immediately petition the Court to

issue a Writ of Possession pursuant to Paragraph 5 of this Agreement. [Landlord's] right to petition the Court shall only last until such time as the [Debtors'] arrearage ... is paid in full. Once, the [Debtors] have paid their arrearage in full, [Landlord's] right to petition for a Writ of Possession shall be extinguished.

*Id.* at § 7.

Landlord filed a Motion for Writ of Possession in the Chittenden Superior Court on Feb. 27, 1996, claiming Debtors had breached the Settlement Agreement. The writ was issued March 19, 1996, and served upon Debtors on March 21, 1996. Debtors each filed a petition for relief under Chapter 7 on March 27, 1996, the day before Landlord was scheduled to repossess the apartment, "when they perceived they had no other legal option" to prevent their eviction. Debtors' Supplemental Memorandum, n. 1 (July 31, 1996). The lease, if it existed, was not assumed pursuant to § 365, nor any action taken to extend the time to assume or reject.

The parties have filed substantively identical pleadings in each case, raising the same issues of fact and law. Accordingly, we have treated the motions together and will decide them both in this Memorandum of Decision.

## DISCUSSION

Debtors contend that their lease has not been terminated, and that even if it has, their holdover possessory interest is sufficient to protect them from actions by creditors. Moreover, as tenants in public housing, they say, they are beneficiaries of two additional sources of protection. First, federal housing law gives public housing tenants what amounts to a perpetually renewable lease that cannot be terminated, except for good cause.[3] Second, § 525(a) prevents any governmental unit from denying certain benefits to a debtor just because that debtor has availed itself of certain of the benefits of bankruptcy. Debtors conclude that their retained interest in the premises is entitled to the protections of federal housing law and

---

3. Debtors claimed federal common law property rights at the hearing on relief from stay. We summarily rejected this argument at the hearing, citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136, 141 (1979) ("Property interests are created and defined by state law."). Accordingly, we do not discuss it here.

§ 525(a), producing the result that they can discharge their arrearages and revive their lease, too. Landlord contends that when the lease terminated, so did the Landlord–Tenant relationship, and the Bankruptcy Court has no power to put it back together again.

For reasons that follow, we conclude that:

—Debtors' lease was terminated prior to their filing, and, in the alternative, was terminated 60 days' after filing when they failed to timely assume or reject, as provided by § 365(d)(1).

—Debtors' holdover possessory interest contains very little in the way of right and much in the way of obligation, and is not entitled to the continued protection of the automatic stay.

—The protections of federal housing law either have been or still can be had in the Chittenden Superior Court.

—The anti-discrimination provisions of § 525(a) do not apply at this juncture.

■■■ Filing for relief under Chapter 7 creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

§ 541(a). The Supreme Court holds that the law of the State of Vermont determines the nature of Debtors' interest in Landlord's premises at the time of their filing.

In the absence of a controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law."

*Nobelman v. American Savings Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (*quoting Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). *See also In re Kong,* 162 B.R. 86, 91 (Bkrtcy.E.D.N.Y.1993) ("Whether or not a lease has terminated prior to bankruptcy is a question of state law.").

Debtors filed bankruptcy the day before they were scheduled to be dispossessed at the end of the process mandated by the law of Vermont. Superior Court Judge Alden Bryan granted Landlord's motion for Writ of Possession on March 19, 1996. The Writ issued the same day, and was served on March 21. Vermont statutory law defines the parties' rights. "Before final judgment, if the defendant ... pays into court the rent in arrear with interest and the costs of suit, such action shall be discontinued."

When the lessee of lands or tenements ... holds possession of the demised premises without right, after the termination of the lease by its own limitation or after breach of a stipulation contained in the lease by the lessee ..., the person entitled to the possession of the premises may have from the presiding judge of the superior court a writ to restore him or her to the possession thereof.

12 V.S.A. § 4851. The Writ of Possession is a judicial determination that Debtors have no rights, and an order that they be turned out.

If the court finds that the plaintiff is entitled to possession of the premises the plaintiff shall have judgment for the possession thereof and for rents not exceeding $5,000 with costs. A writ of possession shall issue accordingly.... The writ shall direct the sheriff of the county in which the property or a portion thereof is located to serve the writ upon the defendant and, no sooner than five days after the writ is served, to put the plaintiff into possession.

12 V.S.A. § 4854.

Debtors' statutory right to cure their default for nonpayment of rent was finally ended, along with their tenancy, when the Chittenden Superior Court "so-ordered" the Settlement Agreement. Under 12 V.S.A. § 4773, Debtors had the right to cure at any time "[b]efore final judgment." The parties' Settlement Agreement acknowledged that the lease had already terminated, but gave Debtors a conditional right to reinstate. When the judge signed on, it became a final judgment. Debtors right to reinstate the lease also terminated because they did not comply with its conditions.

Debtors argue, however, that their interest still has potential viability, citing two Vermont State Court decisions to show that

"tenants have been able to successfully challenge writs of possession and maintain their tenancies." Debtors' Supplemental Memorandum, p. 4. What they show, we believe, is the artful use of the ordinary to do justice in extraordinary circumstances. In *Falcon Management Co., Inc. v. Jacques,* the Vermont Supreme Court affirmed a Superior Court decision reopening a default judgment for eviction to enable the debtor to cure. The defendant there moved to reopen under Rule 60(b). The Supreme Court describes what happened:

At the hearing on her motion, defendant testified that when she was served with the summons and complaint she did not have the money to pay her rent or her rent arrears. She testified in detail about the underlying reasons for the shortage in funds—mainly child support and employment problems. She testified that at the time the writ of possession was served, her circumstances had changed sufficiently to allow her to fully pay back rent, plus interest and costs....

At the close of the hearing the court granted the motion to reopen, and noted that 12 V.S.A. § 4773 became operative. As such the court instructed plaintiff to pick up defendant's rent check, and then dismissed the case.

*Falcon Management Co., Inc. v. Jacques,* 163 Vt. 653, 657 A.2d 1083 (Vt. March 24, 1995), p. 1. The Supreme Court affirmed the procedures followed, which were straightforward applications of basic judicial rules. When the default was reopened, there was " 'no longer a final judgment from which either side may appeal.' " *Id.,* at 2, *quoting* V.R.A.P. 4, Reporter's Notes to the 1992 Amendment. Thus, 12 V.S.A. § 4773 allowed defendant to cure because there was no final judgment. Here, however, there is a final judgment terminating the lease and authorizing the Writ of Possession, and Debtors have made no offer to cure.

Debtors also provide us with a copy of a "Temporary Restraining Order/Preliminary Injunction" issued by the Bennington County Superior Court in *Rogers v. Chittenden Bank,* Docket No. 50149–96 BcC (May 6, 1996). The brief order restrained the Bank

from executing on a Writ of Possession, finding that the tenant "will be immediately and irrevocably harmed by his ejectment by [Bank] if [Bank] does not resort to the procedures set forth by the Vermont Landlord–Tenant Act." *Id.* at 1. Thus, all that we can tell about this case is that the Court intervened to enforce the law Debtors ask us to suspend. Based on the foregoing authorities, we conclude that at the time they filed, Debtors were under a legal duty to leave, had a day's grace to do it on their own, and had no right to cure. After filing, they have those same rights.

■ Assuming, in the alternative, that their lease did survive at the time they filed, it has expired now. The Supreme Court long ago held that

it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement.... We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement....

*Central Trust Co. v. Chicago Auditorium Asso.,* 240 U.S. 581, 591–92, 36 S.Ct. 412, 414–15, 60 L.Ed. 811 (1916). The Court's holding resolved a major conundrum which had long baffled Bankruptcy practitioners. Prior to *Chicago Auditorium,* bankruptcy had evolved the doctrine that became known as "the assume-or-reject election."

The first modern expression of the concept, from which § 365 directly flows, came in an English case, Copeland v. Stephens. Stephens, a sublessee, filed for bankruptcy before the rent he owed Copeland became due. Copeland sued Stephens to recover, and Stephens defended by arguing that the general assignment of all his property, including the lease, to his bankruptcy assignees relieved him from liability on the lease. He had no privity of contract with Copeland, he argued, because, as a sublessee, he dropped out when

the lease passed to the bankruptcy assignees. The Court sidestepped the sweeping and unqualified nature of the legislation authorizing transfer of assets to the bankruptcy assignees by looking to the statute's "particular purpose, viz. the payment of the bankrupt's debts," holding that " '[w]hatever passes, passes by force of the statute, and for the purpose of effecting the object of the statute.' " . . . .

The landlord in *Copeland* won under the Court's theory, because the leasehold never passed from Stephens to the bankruptcy assignees. Rather it was "excluded," absent an affirmative decision to accept it. The bankruptcy assignees' decision not to accept it left Stephens' obligations under the lease unaffected.

McGill & Conrad, *Exorcising Executoriness: Functionalist Arguments and Incantations to Avoid Meeting the Devil in the Woods,* 1995–96 Annual Survey of Bankruptcy Law 137, 152–53, *quoting Copeland v. Stephens,* 106 Eng.Rep. 218, 222 (K.B.1818).

The assume-or-reject election created by the courts and carried forward into the Bankruptcy Code has a clear and fairly modest purpose: to insure that creditors *of the debtor* who are parties to pending contracts and leases do not become administrative creditors *of the estate* merely by virtue of the estate's succession to the debtor's property . . . .

The assume-or-reject election, based on an exclusionary view of unperformed agreements, did what it was intended to do. It protected estate assets for the benefit of creditors generally from demands by nondebtor parties that the trustee fully perform unprofitable agreements. At the same time, however, it created new problems for both sides of such contracts. The nondebtor had no claim, and thus was unable to share in estate distributions. The exclusionary understanding of the assume-or-reject election also had the effect of denying the debtor a discharge, because discharges were granted to a debtor only for those obligations that could be asserted as claims against the estate. Thus, the conceptual issue that courts grappled with around the turn of the century was this:

"In cases where the debtor is not actually in breach of the contract at the moment of bankruptcy, the time as of which claims are determined, how can the nondebtor be said to have a claim?"

*Id.* at 154, *quoting* Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection," 59 U.Colo.L.Rev. 845, 866. The Supreme Court supplied the answer in *Chicago Auditorium.* Bankruptcy is the breach that terminates the pending agreement, giving the creditor a claim and the debtor a discharge. The Bankruptcy Trustee, and in some cases, the debtor, may choose to assume and perform an executory contract or unexpired lease, thereby avoiding the consequences of breach. But in that case, the burdens of performing the assumed contract become an administrative expense of the estate. Both the assume-or-reject election and the bankruptcy-as-breach doctrines were codified, in § 365(a) and (g) respectively. *Id.* at 154, 155–56. Thus, even if Debtors had a lease when they filed, it terminated by operation of the Bankruptcy Code 60 days' after they filed because the lease was not assumed, nor the time to assume or reject extended. § 365(d)(1).

■ Debtors also contend that Landlord's "attempt to evict the debtors for a pre-petition debt is unlawful discrimination under the provisions of Section 525." Debtors' Memorandum in Support of Objection to Relief from Stay, 5. The Bankruptcy Code's anti-discrimination provisions, § 525(a), provide, in pertinent part:

[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor is or has been a debtor under this title . . ., has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title . . . .

This theory brings the issue of special federal protections for public housing tenants into the case in the following way:

> In the bankruptcy context, yet another layer of protection for tenants of federally-subsidized housing arises from 11 U.S.C. § 525(a)[.]
>
> . . . .
>
> This provision prevents a public housing authority from denying a future public housing tenancy to a debtor-tenant on the basis of a prior rent obligation which has been discharged in bankruptcy.... We believe that the strong public policy of 11 U.S.C. § 525 overrides the potential requirement of 11 U.S.C. § 365(b)(1) that a debtor assuming a lease must cure any pre-petition defaults or otherwise provide adequate protection to the landlord.
>
> Finally, another layer of protection to a public housing tenant arises from the pertinent federal Regulations. [A] public housing authority ... must establish "good cause" before the termination of a lease can occur. If the landlord's only basis for a claim of termination of a lease is that the Debtor owes prepetition rent, this basis may not constitute the requisite "good cause," especially in light of the "fresh start" principle of *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

*In re Sudler*, 71 B.R. 780, 786–87 (Bkrtcy. E.D.Pa.1987) (citations omitted).

■ This layer of protection, however, is not available to Debtors here as it was to the debtor in *Sudler*. Judge Scholl, author of *Sudler*, acknowledges the "extremely well-established principle," *id.*, at 785, that "a tenancy interest which has been terminated prior to the bankruptcy filing cannot be revived by the bankruptcy filing." *In re Mason*, 69 B.R. 876, 881 (Bkrtcy.E.D.Pa.1987) (Scholl, J.). This is because § 365(a) applies only to "unexpired leases." In *Sudler*, the lease had not yet been terminated. The protections of § 525(a) and federal housing law were available in *Sudler* because a Penn-

sylvania statute allowed a tenant to cure until "actual delivery" of the premises to the landlord, which had not been accomplished at the time the debtor filed. In Vermont, the right to cure terminates upon entry of final judgment, 12 V.S.A. § 4773. In this case, that happened when the parties' Settlement Agreement was "so-ordered" by the Court.

Moreover, we do not agree with Judge Scholl that it should have been available to the debtor in *Sudler*. First, nothing in Chapter 7 permits a debtor to exercise the assume-or-reject election in the first place. Section 365(a) itself is very explicit: *"the trustee*, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." Only in reorganization cases are debtors authorized to make the election.[4] Second, § 365(b)(1) is not a "potential requirement." It expressly declares that, when an unexpired lease is in default, "the trustee may not assume" without first curing the default, compensating the landlord for costs of the default, and providing adequate assurance of future performance. The Supreme Court has noted, "Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere*, and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate." *NLRB v. Bildisco*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984). *See also Thompson v. Texas Mexican Railway Co.*, 328 U.S. 134, 141, 66 S.Ct. 937, 942, 90 L.Ed. 1132 (1946) (contracts are assumed "cum onere," "subject to their terms and conditions"). The Second Circuit has recently confirmed that "before [a debtor] can be allowed to assume the lease, it must 'cure[ ], or provide adequate assurance that [it] will promptly cure' its failure to make both pre-petition and post-petition lease payments." *In re Burger Boys, Inc.*, 94 F.3d 755, 763 (2d Cir. 1996).

---

**4.** Sections 1107 and 1123(b)(2), 1203 and 1222(b)(6), and 1322(b)(7) give reorganizing debtors the right to assume-or-reject in connection with Plans under Chapters 11, 12, and 13, respectively. In each case, however the right is expressly made "subject to section 365." §§ 1123(b)(2), 1222(b)(6), 1322(b)(7).

Like *Sudler, In re Curry,* 148 B.R. 966 (S.D.Fla.1992) also held that "§ 525(a) controls over ... § 365(b)(1)(A)," but for the additional reason that "as a matter of statutory construction Section 525(a) is more specific." *Id.* at 972. The reverse appears to be true to us. Section 365(b)(1) applies to an unexpired residential lease, applies in this Chapter 7 bankruptcy proceeding, and to parties under our jurisdiction at the moment. Section 525(a) applies to "a license, permit, charter, franchise, or other similar grant," applies for so long as these debtors shall live, and binds entities known and unknown.

█ Moreover, we hold that "a license, permit, charter" or "franchise" is not a "similar grant" to a lease.[5] The legislative history tells us that § 525(a)

> codifies the result of Perez v. Campbell, 402 U.S. 637 (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a driver's license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st sess. 366–67 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6322–23, reprinted in Norton Bankruptcy Code Pamphlet 1996–97 Ed., 586. Noting that "[t]he courts have been developing the Perez rule," Congress stated that the

> section permits further development to prohibit actions by governmental or quasi-governmental organizations that perform licensing functions, such as a State bar association or a medical society, or by other organizations that can seriously affect the debtors' livelihood or fresh start, such as exclusion from a union on the basis of discharge of a debt to the union's credit union.

*Id.* We think a lease is not a "similar grant" to a driver's license or a union card. The relation between landlord and tenant is much more substantial than that between states and drivers or professional associations and licensees. The landlord conveys an interest in what it owns. State departments of motor vehicles, unions, and professional associations grant much different kinds of rights. In any event, even where a lease survives to filing, it is terminated by bankruptcy, not the governmental unit, and thus § 525(a) does not apply.

We do not agree with the Court in *In re Knight,* 8 B.R. 925, 929 (Bkrtcy.D.Md.1981), which held that "the trustee's rejection of a residential lease constitutes an abandonment of the estate's interest in the lease to the Debtor," not a breach allowing a landlord to evict an otherwise current debtor. "[A] literal reading of § 365," *Knight* says, "allows a landlord to evict tenants regardless of default solely on the basis that the tenant has sought relief under the Code[,] an inequitable result [that] could not have been intended." *Id.* Curiously, the problem rarely comes up, perhaps because landlords accept on-going rent payments postpetition, thereby waiving the bankruptcy default. In any event, we believe the Code is clear, and that Congress plainly intended the result. The legislative history to § 502 specifically states that "bankruptcy operates as the acceleration of the principal amount of all claims against the debtor" and that "[a]ll ... contingent or unmatured claims are to be liquidated by the bankruptcy court in order to afford the debtor complete bankruptcy relief." *Knight's* holding that the lease passes to the Debtor sets bankruptcy back 100 years, to the time before *Chicago Auditorium,* depriving the landlord of a claim and the debtor of a discharge. Debtors who need to assume unexpired residential leases have that option available to them in Chapter 13.

---

**5.** We believe the Court in *Curry* inappropriately elided the statutory text when quoting § 525(a), and thus avoided dealing with this issue. According to *Curry,* the statute says, "by its plain terms":

> A governmental unit may not ... revoke [a] grant to ... a person that is or has been a

> debtor under this title ... solely because such ... debtor ... has not paid a debt that is dischargeable in a case under this title.

*Curry, supra,* 148 B.R. at 971. In fact, however, what may not be revoked is a "similar grant" to the types enunciated by the statute.

Debtors also argue estoppel, but did not present evidence sufficient to establish it. In any event, both estoppel and the federal protections for public housing tenants are out of time here. They were or are available in State Court and should have been or should be made there. *See, Highgate Associates v. Davison,* Docket No. 116–7–86 Wnc, District Court of Vermont, Unit 3, Washington Cir. (Dec. 2, 1987) (Landlord's motion for Writ of Possession denied because it was estopped from relying on stipulation and had failed to comply with 24 C.F.R. § 247). Debtors property rights have been fully adjudicated by Vermont's Courts. We have no power to sit in appeal from their actions.

■ We are required by § 362(d)(2) to grant relief from the stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." Landlord "has the burden of proof on the issue of the debtor's equity in property"; Debtor "has the burden of proof on all other issues." § 362(g). Landlord proved that Debtors have no protectible interest in the property, and, because theirs are Chapter 7 cases, reorganization is not an issue. Thus, Landlord is granted relief from the stay to recover its property.

Landlord is to settle an order on five days notice to Debtors.