**In re Robert E. CASSANI and Shirley J. Cassani.**

**Robert E. CASSANI and Shirley J. Cassani, Appellants,**

v.

**Gleb GLINKA, Trustee, and General Electric Supply Co., Appellees.**

**No. 2:97–CV–138.**

United States District Court, D. Vermont.

Oct. 22, 1997.

Oliver Lee Twombly, Barre, VT, for Appellant.

George T. Faris, IV, Shelburne, VT, for Appellee G.E. Supply Co.

Kevin Purcell, U.S. Trustee, Albany, NY, pro se.

Gleb Glinka, Law Offices of Gleb Glinka, Cabot, VT, pro se.

*OPINION AND ORDER*

SESSIONS, District Judge.

Robert E. and Shirley J. Cassani (the "Cassanis" or the "Debtors") appeal from an order of the Bankruptcy Court for the District of Vermont (Conrad, J.) filed January 13, 1997, which disallowed their claim of exemption filed June 9, 1994. For the reasons that follow, the case is remanded for further proceedings consistent with this opinion.

*I.  Factual Background*

The Cassanis were the shareholders of Cassani Electrical Services, Inc., located in Barre, Vermont. The company ran into financial difficulty in 1990–1991. General Electric Supply Company ("GES"), which had opened a credit account for the business, personally guaranteed by the Cassanis, was a substantial creditor. After unsuccessful efforts to negotiate a payment schedule, GES attached property belonging to the Cassanis in Groton, Vermont, and secured an Order and Decree of Foreclosure in the Superior Court of Vermont, Washington County.

Just before the expiration of the redemption period, the Cassanis filed petitions for relief under Chapter 11 of the Bankruptcy Code, for the business and for themselves personally, in November, 1991. In their personal bankruptcy case, they listed real estate and debts on Schedules A and D. On Schedule C, they stated that they "reserve[d] the right to claim all exemptions at a later date."

As part of their reorganization plan, the Cassanis and GES agreed that the GES claim, in excess of $60,000.00, would be paid in full from the proceeds of the sale of the Groton property, after payment of the expenses of sale and all prior liens. Attempts at reorganization were unsuccessful, and on April 13, 1994, the Cassanis' personal bankruptcy case was converted from one brought under Chapter 11 to one brought under Chapter 7. The corporate bankruptcy case was dismissed.

A first meeting of creditors was held on May 20, 1994, and adjourned to June 17, 1994. Between the two meetings, on June 9, 1994, the Cassanis filed amended schedules with the Bankruptcy Court. On Schedule C they claimed the "wildcard exemption" of Vt. Stat. Ann. tit. 12, § 2740(7) (1973 and Supp. 1996) for the full value of the Groton property, listed as $80,000.00, although § 2740(7) has a cap of $14,800.00 for joint debtors. The letter of transmittal to the Bankruptcy Court indicates that copies of the amended schedules were sent to the Cassanis and to the Trustee. No certificate of service was filed. No notice of an amendment to Schedule C was provided to GES.

The Trustee, with the assistance of GES, proceeded to invest time and money in clearing title to the Groton property. All prior liens were successfully avoided. The Trustee entered into a stipulation with GES in March 1995 to split the proceeds from the sale of the Groton land. Notice was provided of the stipulation in July 1995, specifying that an agreement had been reached, and providing a date by which to file objections. The notice did not state what the terms of the agreement were. The Cassanis, believing that their claim of exemption would be satisfied before any creditors were paid, didn't investigate the terms of the Trustee's agreement with GES. The property was sold to a daughter of the Cassanis for $44,400.00 in May, 1996.

The Cassanis learned that the proceeds of the sale of the Groton property would be split without first satisfying the exemption in May, 1996. They protested to the Trustee, who indicated that he would resist the claim of exemption. The Cassanis then filed a Motion to Avoid the Lien of GES. GES filed opposition, claiming laches. It claimed that it was prejudiced, because it had invested time and effort in assisting the Trustee in avoiding liens against the property, and would not have done so had it known of the Cassanis' claim of exemption.

After a hearing, the Bankruptcy Court issued a Memorandum of Decision on August 14, 1996, deferring the motion to avoid. It ruled that the filing of the amended schedule was timely, but that service was defective. The Bankruptcy Court required the Cassanis to give proper notice of the amendment, and afforded thirty days for objections to be filed. GES and the Trustee filed timely objections,

based on unreasonable delay in filing the schedule and giving notice, prejudice, and bad faith.

At a hearing on December 9, 1996, Judge Conrad ruled from the bench that laches applied, and he disallowed the exemption. Counsel for GES was not present, nor was any evidence taken. Upon denial on February 4, 1997 of a motion for reconsideration, this appeal followed. On appeal, the Cassanis argue that their notice of the amendment to Schedule C was adequate; that the Bankruptcy Court erred in applying the doctrine of laches; that the Bankruptcy Court denied the Cassanis their "fresh start," contrary to the policy of the Bankruptcy Code; and that it erred in denying their motion for reconsideration.

## II. *Discussion*

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Bankruptcy Judge's findings of fact shall not be set aside unless clearly erroneous. Bankruptcy Rule 8013. Questions of law are reviewed de novo. *Scherer v. Carroll*, 150 B.R. 549, 551 (D.Vt.1993).

### A. *Adequacy of Notice*

Bankruptcy Rule 1009(a) provides in pertinent part: "A ... schedule ... may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give notice of the amendment to the trustee and to any entity affected thereby." The Bankruptcy Court held that the Cassanis made a timely claim of exemption, but failed to provide proper notice. It found that GES was entitled to notice, because it qualified as an "entity affected" due to its status as a lienholder on the property. Memorandum of Decision, Aug. 14, 1996, at 3–4.

■ Each creditor is an "entity affected" by an amendment to a schedule of property claimed as exempt. *In re Ginn*, 186 B.R. 898, 900 (Bankr.D.Md.1995). Furthermore, the Cassanis were clearly aware that GES in particular was an "entity affected" because GES had very nearly completed foreclosure on the property which the Cas-

sanis later sought to exempt. The record indicates that the Trustee was informed on June 17, 1994 that the Cassanis might attempt to avoid the GES lien through claiming the wild card exemption. Tr. June 17, 1994 Adjourned Meeting of Creditors, at 8. The cover letter to the amended schedule filed with the Bankruptcy Court indicates that the Trustee was sent a copy of the amended schedule. The Trustee has sworn in an affidavit, however, that he did not receive a copy of the amended schedule until after May 30, 1996. Regardless, there is no indication in the record that GES received any sort of notice whatsoever. Notice to the Trustee alone is insufficient under Bankruptcy Rule 1009. The Bankruptcy Judge correctly held that the Cassanis failed to provide proper notice of their amended schedule C.

### B. *Laches*

■ A party asserting the equitable defense of laches must establish an unreasonable lack of diligence under the circumstances, as well as prejudice from such a delay. *King v. Innovation Books*, 976 F.2d 824, 832 (2d Cir.1992). Circumstances which constitute laches involve questions of fact, with the ultimate conclusion being a question of law. *Laird Properties New England Land Syndicate v. Mad River Corp.*, 131 Vt. 268, 282, 305 A.2d 562 (1973). But because the determination of laches is committed to the discretion of the lower court, such a determination will not be reversed unless shown to be clearly erroneous. *Gardner v. Panama R. Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951); *Laird Properties*, 131 Vt. at 282, 305 A.2d 562.

Judge Conrad found that GES and the Trustee invested time and money to clear title to the Groton property, negotiate access to the property to make it more valuable, and conduct the sale. He found further that the Cassanis had notice of the stipulation between the trustee and GES in 1995, and of the impending sale of the Groton property, and they raised no objection until filing their motion to avoid lien in June, 1996. He held that

the debtors did not exercise their rights as rapidly as they should have, and in fact by

waiting so long and sitting on their rights they have satisfied all the requirements of laches and accordingly, I find that their exemption is valid [sic]. But they may not claim any of the proceeds from the Groton property because of General Electric's clear and convincing efforts that they did to secure proceeds for themselves and the estate. So the exemption is overruled.

Tr. of Dec. 9, 1996 Hearing at 11.

■ The Bankruptcy Court's ruling on delay is adequately supported by the undisputed facts, and is not clearly erroneous. However, it appears from the record that the Bankruptcy Court failed to make findings on prejudice, the second element of laches. Delay alone does not constitute prejudice to creditors where the case is not closed. *In re Sheridan*, 38 B.R. 52, 54 (Bankr.D.Vt.1983).

■ Furthermore, to disallow an exemption because of untimely filing or improper notice which has worked prejudice to creditors may be unequitable in certain circumstances. *See In re Blaise*, 116 B.R. 398, 401 (Bankr.D.Vt.1990). Where the prejudice has occurred through mere negligence, for example, rather than intentional misconduct or gross neglect, the prejudice may be cured by requiring reimbursement of costs and expenses incurred in detrimental reliance on the original exemption schedule. *Id.* As a court of equity, empowered to invoke equitable principles to achieve fairness and justice, *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.1994), it was incumbent upon the Bankruptcy Court to balance the equities between the parties in this case. *See In re Blaise*, 116 B.R. at 401–02. It is not clear from the record that it did so.

III. *Conclusion*

Accordingly, this case is remanded to the Bankruptcy Court for findings on the issue of prejudice, and to balance the equities in fashioning appropriate equitable relief if prejudice is found. Because this Court's ruling on the issue of laches necessitates remand, it is unnecessary to reach Appellants' arguments on the Bankruptcy Code's "fresh start" poli-

cy, or the denial of the motion for reconsideration.