**In re Derek Milo COUTURE and Veronica Lee Whalon.**

**Derek Milo COUTURE and Veronica Lee Whalon, Appellants,**

v.

**BURLINGTON HOUSING AUTHORITY, Appellee.**

Nos. 97–CV–127, 97–CV–128.

United States District Court, D. Vermont.

July 14, 1998.

As Corrected July 27, 1998.

Lila Shapero, Vermont Legal Aid, Inc., Burlington, VT, for debtors.

Nadine Labato Scibek, Burlington, VT, for appellee.

Kevin Jay Purcell, Office of the U.S. Trustee, Albany, NY, for United States Trustee.

## OPINION AND ORDER

SESSIONS, District Judge.

Derek Milo Couture and Veronica Lee Whalon (the "Coutures" or the "Debtors") appeal from an order of the Bankruptcy Court of the District of Vermont (Conrad, J.) entered December 3, 1996, lifting the automatic stay provisions of the Bankruptcy Code to allow Burlington Housing Authority ("BHA") to evict the Coutures. For the reasons that follow, the Bankruptcy Court's decision is reversed and BHA is ordered to

make public housing available to the Coutures.

## I. *Factual Background*

The Coutures filed Chapter 7 bankruptcy petitions on March 27, 1996.[1] At the time that the petitions were filed, the Coutures lived in a public housing project owned and operated by BHA (the "Franklin Square apartment"). The filing of the petitions created an automatic stay under the Bankruptcy Code that prevented BHA from evicting the Coutures under an outstanding writ of possession issued by Chittenden Superior Court.

The Coutures' problems with BHA date back to August 24, 1994 when BHA served the Coutures with a notice to vacate for nonpayment of rent. BHA subsequently filed an ejectment action in Chittenden Superior Court in Burlington to regain possession of the Coutures' apartment. BHA moved for summary judgment. On May 2, 1995, the Superior Court judge granted the motion and requested that the parties submit a "proposed judgment order." Appellee Appendix, Doc. No. 1.

The parties negotiated a settlement agreement which fixed the amount of rent in arrears and set up a repayment schedule. The agreement allowed the Coutures to remain in the apartment. BHA could, however, petition the Chittenden Superior Court immediately for a writ of possession if the Coutures failed to meet the repayment schedule. The Superior Court approved the terms of the settlement agreement on June 1, 1995.

The Coutures failed to pay their current rent and the amount due in arrears in October and November of 1995. Beginning in December 1995, the Department of Social Welfare paid the Coutures' current rent and arrearage directly from their Aid to Families with Needy Children ("AFNC") grant. On February 26, 1996, BHA filed a motion for writ of possession with Chittenden Superior Court. The Superior Court granted the motion on March 19th, and the writ was served on the Coutures on March 21st. The writ provided that BHA could regain possession

---

1. The bankruptcy petitions were filed in the names of Derek Milo Couture and Veronica Lee Whalon, respectively. After the Coutures' mar- riage, the proceedings have been informally consolidated.

of the Coutures' apartment within 60 days of the writ's issue. The Coutures filed Chapter 7 petitions for bankruptcy on March 27th.

The filing of the Chapter 7 petitions automatically stayed BHA from evicting the Coutures from the Franklin Street apartment. The Department of Social Welfare continued to pay their current rent, but stopped making payments on the rent in arrears. BHA filed a motion with the Bankruptcy Court for relief from the automatic stay so that BHA could proceed with the Coutures' eviction.

The Bankruptcy Court granted the motion on November 21, 1996. *In re Couture,* 202 B.R. 837 (Bankr.D.Vt.1996). The Court found that the settlement agreement approved by the Chittenden Superior Court on June 1, 1995 "establishes ineluctably that Debtors' lease was terminated pre-petition" because paragraph 1 of that agreement states: "The Tenants admit that their lease has been legally terminated by BHA for non-payment of rent." 202 B.R. at 839; Appellant Appendix, Doc. No. 1. The Court further found that even if the settlement agreement had not terminated the Coutures' lease, the lease was terminated 60 days after their Chapter 7 petitions were filed because the trustee did not take any action to assume the unexpired lease or to extend the time to assume the lease. 202 B.R. at 840.

The Coutures moved for a stay pending appeal of this decision, but the Bankruptcy Court denied the motion on January 2, 1997. The Coutures continued to pay current rent on the Franklin Square apartment until December 1996 (indirectly through the Department of Social Welfare from December 1995 through July 1996 and then directly from August until December 1996). BHA regained possession of the apartment on January 15, 1997.

The Coutures have appealed the Bankruptcy Court's decision to grant BHA relief from the automatic stay provisions of the Bankruptcy Code. Specifically, the Coutures appeal the Court's finding that: (i) they did not have a property interest in their public housing tenancy; (ii) the anti-discrimination provisions of Section 525(a) of the Bankruptcy Code, 11 U.S.C. § 525(a), protect a public housing tenant from eviction when pre-peti-

tion rent in arrears is discharged; (iii) the set-aside provisions of Section 325 of the Bankruptcy Code, 11 U.S.C. § 325, which give the bankruptcy trustee 60 days to assume or reject an unexpired lease, are subordinate to the anti-discrimination provisions of Section 525(a); and (iv) even if Section 325 does apply, BHA abandoned the property to the Coutures.

## II. *Discussion*

### A. *Jurisdiction*

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a)(1) which gives the Federal District Courts jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" (cases and proceedings involving purely bankruptcy matters). Motions to terminate, annul or modify the automatic stay are considered core proceedings under 28 U.S.C. § 157(b)(2)(G).

### B. *Standard of Appellate Review*

A bankruptcy judge's findings of fact may not be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir.1990); *In re Cassani,* 214 B.R. 459, 462 (D.Vt.1997). Questions of law are reviewed *de novo. Gravel and Shea v. Vt. National Bank,* 162 B.R. 961, 964 (D.Vt.1993)(citing *In re Manville Forest,* 896 F.2d at 1388).

A bankruptcy judge's decision to lift an automatic stay is considered discretionary. *In re Sonnax Industries, Inc.,* 907 F.2d 1280, 1286 (2d Cir.1990). "In this context, '[a]n abuse of discretion may take the form of the application of erroneous legal principles or procedures, [or] findings of fact which are clearly erroneous,' " *Contemporary Mortgage Bankers, Inc. v. High Peaks Base Camp, Inc.,* 156 B.R. 890, 893 (N.D.N.Y.1993)(quoting *In re Chateaugay Corp.,* 109 B.R. 613, 619 (S.D.N.Y.1990), appeal dismissed without prejudice and remanded on other grounds, 924 F.2d 480 (2d Cir.1991)).

### C. *Whether the Coutures retained a possessory interest in their apartment at the time that they filed their Chapter 7 petitions*

The Bankruptcy Court Judge held that the Coutures "came into Bankruptcy with no le-

gally cognizable interest" in their apartment. 202 B.R. at 838. After supplemental briefing on the issue, Judge Conrad found that the June 1, 1995 settlement agreement had, by its terms, terminated the Coutures' lease for non-payment of rent. Since the lease was terminated before the bankruptcy filing, it could not be protected by the automatic stay provisions of the Bankruptcy Code. The Coutures have asked the Court to find that the Bankruptcy Court erred because as public housing residents, the Coutures held other important property interests which gave them equity in their unit and because the Writ of Possession issued by Chittenden Superior Court did not terminate their lease.

The Court finds it unnecessary to reach the question of whether the Coutures' status as public housing tenants provided an extra layer of equitable protection that enabled them to retain a possessory interest in their apartment after their Chapter 7 filing, for the Court finds that the Bankruptcy Court erred in finding that the lease terminated at the time that the parties entered the settlement agreement.

■ In determining whether the Coutures retained a possessory interest in their lease at the time of filing their Chapter 7 petitions, the Court must consider whether a possessory interest would be cognizable under Vermont law. "Congress 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.'" *Nobelman v. American Savings Bank*, 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (quoting *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)).

The Bankruptcy Court found that by entering into the June 1, 1995 settlement agreement, the Coutures had terminated their lease on the Franklin Square apartment was terminated. 202 B.R. at 840. In making that finding, the Bankruptcy Court emphasized the significance of the first term of the settlement agreement which states that by signing the agreement, the Coutures "admit their lease has been legally terminated by BHA for non-payment of rent." *Id.* at 839. The Bankruptcy Court further found

that after entering into the settlement agreement, the Coutures possessed only "a statutory right to cure their default for nonpayment of rent" under 12 V.S.A. § 4773 before final judgment. *Id.* at 840. When the Chittenden Superior Court Judge granted BHA's motion for writ of possession on March 19, 1996, the Coutures lost this statutory right because the writ of possession is a final judgment. *Id.* (citing 12 V.S.A. § 4854).

■ The Court finds that the Bankruptcy Court erred in finding that the parties' settlement agreement terminated the Coutures' lease, leaving them only with a right to reinstate the lease when the back rent that they owed was fully paid. While it is true that the first term of the settlement agreement states that the Coutures "admit their lease has been legally terminated by BHA for non-payment of rent," the remaining terms clearly establish a month-to-month tenancy spelling out a payment schedule for payment of current rent and rent in arrears. Appellants' Appendix, Doc. No. 1.

The harder question presented is whether the Vermont Supreme Court would find that the Chittenden Superior Court's issuance of a writ of possession on March 19, 1996, and the subsequent service of that writ on March 21st, terminated the Coutures' month-to-month tenancy before their bankruptcy filings on March 27th. In this Court's view, the Vermont Supreme Court would find that the Coutures retained a possessory interest in their apartment until *the execution*—not the issuance or service—of the writ of possession.

■ Section 4773 of the Vermont landlord tenant law provides that an ejectment action is discontinued if the defendant pays into court the rent in arrear with interest and costs before final judgment. 12 V.S.A. § 4773. In *Tucker v. Bushway*, 166 Vt. 592, 689 A.2d 426 (1996), the Vermont Supreme Court concluded "that the term 'final judgment' may assume different meanings depending on the context in which it is used." In that case, the trial court had entered judgment for the landlord, ordering eviction of the tenants and payment of back rent, on October 18, 1995. The tenants paid the rent

in arrears, plus interest, on November 17, 1995. The Vermont Supreme Court reversed the trial court's determination that its eviction order had constituted a final judgment for purposes of 12 V.S.A. § 4773.

■ "We must construe § 4773 in light of its purposes and to avoid an irrational result." *Id.*, 689 A.2d at 427. (citing *Santi v. Roxbury Town Sch. Dist.*, 165 Vt. 476, 685 A.2d 301, 304 (1996)). In *Tucker v. Bushway*, the Vermont Supreme Court found the irrational result would be to allow a tenant "to *regain* entry to the property" by paying the rental arrears (plus interest and costs). *Id.* In other words, it makes no sense to give a tenant the ability to reverse an eviction once it has been effected. After a writ of possession has been executed, the landlord should have the ability to re-rent the vacated premises without concern that the evicted tenants may repay their arrearage and have their tenancy reinstated.

This reading of the *Tucker v. Bushway* opinion comports with the Vermont Supreme Court's obvious inclination in earlier cases to allow a tenant to cure a default in past due rental payments even after the trial court has issued a writ of possession. *See, e.g., Falcon Management Company, Inc. v. Catherine Jacques* (1995), Appellants' Appendix, Doc. No. 4 (affirming the Chittenden Superior Court's decision to allow the defendant to avoid eviction by tendering a check for the amount of back rent plus interest and costs even though that Court had already issued and served a writ of possession).

■ As applied to the facts of the instant case, the Court finds that these decisions indicate that the Vermont Supreme Court would affirm a lower court decision that allowed the Coutures to avoid eviction by paying the rental arrearage (plus interest and costs) even after the writ of possession was issued and served. While the Coutures could not *regain entry* to their Franklin Square apartment by paying the arrearage after the writ of possession was executed, they retained the ability to cure the default until their eviction. This Court finds, therefore, by reference to Vermont law, that the Coutures retained a possessory interest in their apartment at the time of their bankruptcy filing.

D. *Whether the Coutures' lease was terminated 60 days after they filed their Chapter 7 petitions*

The Bankruptcy Court held that "even if [the Coutures] had a lease when they filed [their Chapter 7 petitions for bankruptcy], it terminated by operation of the Bankruptcy Code 60 days after they filed because the lease was not assumed, nor the time to assume or reject extended." *In re Couture*, 202 B.R. at 842 (citing 11 U.S.C. § 365(d)(1)). According to the Bankruptcy Court Judge, the Coutures' bankruptcy was "the breach" that terminated their lease, absent assumption by the trustee on behalf of the bankrupt estate. *Id.*

The Coutures have asked the Court to find that the Bankruptcy Court erred in holding that these "set-aside provisions" found in Section 365 of the Bankruptcy Code are subordinate to the anti-discrimination protections made available in Section 525 of the Code. The Court finds that the Bankruptcy Court erred in holding that the Coutures' lease terminated by operation of Section 365 when the lease was not assumed within 60 days of filing. The Court finds this error to be reversible error in view of the protection afforded a public housing tenant by the anti-discrimination provisions of Section 525.

■ In a case under Chapter 7, if the trustee does not assume or reject an unexpired lease of residential real property within 60 days of the bankruptcy filing, the lease is deemed rejected. 11 U.S.C. § 365(d)(1). The rejection of that unexpired lease constitutes a breach of the lease. 11 U.S.C. § 365(g). *See also In re Hepburn*, 27 B.R. 135, 136 (Bankr.E.D.N.Y.1983). In a Chapter 7 case, "[a] residential lease, while theoretically an asset of the estate, is not one that a Chapter 7 trustee will generally assume and assign...Whether he formally abandons the lease, or simply closes the case without administering it, the lease will revert to the Debtor." *In re Touloumis*, 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994)(citing 11 U.S.C. § 554).

"It is generally agreed that the automatic rejection of a lease ...effects an abandonment of the lease *to the debtor*." (emphasis added) *In re Bacon*, 212 B.R. 66, 68 (Bankr. E.D.Pa.1997); *In re Collins*, 199 B.R. 561, 565 (Bankr.W.D.Pa.1996). The debtor is essentially placed in the same position that he would have been in absent the commencement of the bankruptcy case, except that payment of outstanding pre-petition rent is stayed, *In re Collins*, 199 B.R. at 565, and ultimately discharged. *In re Bacon*, 212 B.R. at 73, n. 13.

"Lease rejection is not synonymous with lease termination. . The former is a bankruptcy concept that determines whether the estate will administer the lease asset." *Id.* at 69 (citing Jay L. Westbrook, "A Functional Analysis of Executory Contracts," 74 Minn.L.Rev. 227, 248 (1989)). "Rejection has absolutely no effect upon the contract's existence; the contract is not cancelled, repudiated, rescinded, or in any fashion terminated." *Id.* (quoting Michael T. Andrew, "Executory Contracts Revisited. A Reply to Professor Westbrook," 62 U. Colo.L. Rev. 1, 15 (1991)).

Although Section 365(g) provides that the rejection of a lease constitutes a breach, the breach does not terminate an unexpired lease. "To so hold would be to find that a lease otherwise not in default under state law would be terminated by the trustee's failure to assume it." *In re Bacon*, 212 B.R. at 73, n. 15 (expressly disagreeing with *In re Couture* and citing *In re Knight*, 8 B.R. 925, 929 (Bankr.D.Md.1981) and Michael T. Andrew, "Executory Contracts in Bankruptcy: Understanding Rejection," 59 U. Colo. L.Rev. 845, 873 (1988)).

As the lease is no longer property of the estate, the bankruptcy courts generally grant private landlords relief from the stay to exercise their state law remedy of ejectment as a result of contractual defaults under the rejected lease. And those landlords who do not seek relief await discharge and termination of the stay, § 362(c)(2)(C), to enforce their rights under the lease other than the right to collect the discharged debt. *In re Bacon*, 212 B.R. at 68. "Except that the [Chapter 7] debtor's discharge in bankruptcy absolves her of the debt for rent, the landlord is entitled to whatever his remedies would be in [state] court, absent bankruptcy, for breach of a lease...Despite the discharge, a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent." *In re Touloumis*, 170 B.R. 825, 830 (Bankr. S.D.N.Y.1994).

"It is crystal clear ...that a discharge only prevents a creditor from proceeding against the debtor on the debt as a personal liability." *In re Rush*, 9 B.R. 197, 200 (Bankr.E.D.Pa.1981). Since the failure to pay rent is a breach of the lease, the landlord may pursue any remedy to which it is entitled under state law for that breach except a remedy against the debtor personally to collect the money due. The landlord may still proceed in rem against the leased premises. *In re Bacon*, 212 B.R. at 69.

This Court finds, therefore, that the Bankruptcy Court erred in holding that the Coutures' interest in their tenancy terminated upon the automatic rejection of their lease. The question presented is whether this holding is harmless error. "Bankruptcy Rule 9005 adopts for the purposes of bankruptcy proceedings Fed.R.Civ.P. 61, which provides that 'no error or defect in any ruling or order or in anything done or omitted by the court' is ground for disturbing an order 'unless refusal to take such action appears to the court inconsistent with substantial justice....'[T]he court 'must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.'" *In re Sanshoe Worldwide Corporation*, 993 F.2d 300, 305 (quoting *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 647 (2d Cir.1988)).

With the automatic stay lifted by the Bankruptcy Court's order, BHA was free to proceed with eviction proceedings in state court. However, BHA could only proceed against the Coutures *in rem* for failure to make pre-petition payments of rent in arrears in accordance with the June 1995 set-

tlement agreement.[2] Those arrears rental payments were dischargeable, and were ultimately discharged, by the Coutures' Chapter 7 filing.

Whether BHA proceeded in state court to press the Coutures' eviction before or after the discharge of the debt, such an eviction proceeding would clearly be prohibited by Section 525 of the Bankruptcy Code. "A governmental unit may not ...revoke...a ...grant to... a person that is or has been... a bankrupt or debtor...*solely because* [that person] has not paid a debt that is dischargeable...or that was discharged under the Bankruptcy [Code]." (emphasis added) 11 U.S.C. § 525. *See In re Szymecki,* 87 B.R. 14 (Bankr.W.D.Pa.1988).

The rights of the landlord to proceed in state court are limited. The landlord's action must be based *wholly* on the debtor's default on post-petition rent payments. *See In re Knight,* 8 B.R. at 929. "A creditor may not make payment of a debt incurred before filing a condition of maintenance of the status quo, lest the entire thrust of the bankruptcy system be subverted." *In re Gibbs v. Housing Authority of New Haven,* 76 B.R. 257, 262 (D.Conn.1983).

The Court finds that the Bankruptcy Court's lifting of the automatic stay was reversible error (as was the Court's denial of a stay pending appeal of this action) because those holdings resulted in an eviction that is not readily remediable and in contravention of Section 525 of the Bankruptcy Code.. "Should it be determined that [a public housing tenant's] eviction was improper, the wrong cannot be speedily made right because of the demand for low-cost public housing and the likelihood that the space from which he was evicted will be occupied by others." *Caulder v. Durham Housing Authority,* 433 F.2d 998 (4th Cir.1970)(citing with approval *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir.1970)).

---

**2.** BHA does not contest the fact that the Coutures had been making current and arrears rental payments through their AFNC grant for three months prior to the bankruptcy filing. Nor does BHA contest the fact that the Coutures continued

### III. *Conclusion.*

The Order for Relief from Automatic Stay that was entered by the Bankruptcy Court on December 3, 1996 is reversed. This Court finds that the Bankruptcy Court erred in finding that the Appellants had no possessory interest in their public housing tenancy at the time that they filed Chapter 7 bankruptcy petitions. This Court further finds that the Bankruptcy Court erred in finding that the automatic rejection of the Coutures' unexpired lease resulted in the termination of that lease. As the Appellants have been evicted from their public housing tenancy, the Appellee is ordered to restore the Appellants to public housing immediately.

to make current rental payments until December 1996—the month after the Bankruptcy Court's decision to grant BHA's motion to lift the automatic stay and proceed with their eviction.